**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION**

| | |
|---|---|
| JOSHUA JACKSON, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No.: 7:24-cv-167 ) |
| v. | ) ) **JURY TRIAL DEMANDED** |
| PFP INDUSTRIES, LLC, | ) ) |
| Defendant. | ) |

## ORIGINAL COMPLAINT

Plaintiff JOSHUA JACKSON ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, brings this action for damages and other legal and equitable relief from Defendant PfP Industries, LLC ("Defendant"), for violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.*, Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 *et seq.* ("Section 1981") and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1. This is a collective action brought by Plaintiff challenging acts committed by Defendant against Plaintiff and those similarly situated, which amount to violations of federal wage and hour laws.

2. Defendant employed Plaintiff and all those similarly situated in a position called "Subcontractors" and required them to work in excess of 40 hours per week without overtime pay in violation of the FLSA. Instead, they were paid a flat day rate for each day they worked.

3. Accordingly, Plaintiff brings this action, pursuant to 29 U.S.C. § 216(b), on behalf of a collective group of persons employed by Defendant as "Subcontractors" nationwide during the past three years through the final date of the disposition of this action who were denied overtime pay of one and half times their hourly rate for all hours worked in excess of 40 per week in violation of the FLSA and are entitled to recover: (i) unpaid overtime wages; (ii) liquidated damages; (iii) attorney fees and costs; (iv) interest; and (v) such other and further relief as this Court finds necessary and proper.

4. Plaintiff additionally brings this action for racial discrimination, hostile work environment, and retaliation in violation of Title VII and Section 1981 and is entitled to recover: (i) back pay; (ii) emotional damages; (iii) front pay; (iv) punitive damages; (v) attorneys' fees and costs; and (vi) interest.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under the Declaratory Judgment Statute, 28 U.S.C. § 2201, and under 29 U.S.C. §§ 201 *et seq*.

6. Venue is proper in this Court pursuant to 29 U.S.C. §§ 201-219, in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendant maintains offices, conducts business, and resides in this district.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

7. Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

8. Plaintiff has requested the issuance of his Right to Sue Letter from the EEOC before the filing of this lawsuit.

## THE PARTIES

9. Plaintiff is a citizen of Texas and resides in Forney, Texas.

10. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of the FLSA, Title VII, and Section 1981.

11. Defendant is a limited liability corporation that is headquartered in Midland, Texas, and registered to do business in Texas.

12. Defendant transacted and continues to transact business within Texas and this judicial district by formerly and currently employing Plaintiff and the other "Subcontractors" within Texas, operating facilities within Midland, Texas.

13. Defendant has at all relevant times been an "employer" covered by the FLSA, Title VII, and Section 1981.

14. Upon information and belief, the amount of qualifying annual volume of business for Defendant exceeds $500,000.00 and thus subjects Defendant to the FLSA's overtime requirements.

15. Upon information and belief, Defendant is engaged in interstate commerce. This independently subjects Defendant to the overtime requirements of the FLSA.

16. Defendant employs well over 15 "Subcontractors" throughout the relevant time period.

## STATEMENT OF FACTS

17. Defendant is an entity engaged in the fracking/oil industry that provides chemicals, machines/equipment, and water-clean-up systems to third-party oil/gas companies.

18. Defendant employed Plaintiff and the other "Subcontractors" to clean, monitor, and perform general maintenance of its machines/equipment.

19. Defendant provided these services and employed Plaintiff and the other "Subcontractors" at its fracking/oil locations in, but not limited to, Texas, Utah, and New Mexico.

20. Defendant used Site Supervisors to oversee Plaintiff and the other "Subcontractors" at its locations. Defendant called these Site Supervisors "Contractors" to skirt the FLSA's requirement to pay Plaintiff and the other "Subcontractors" overtime pay as set forth below.

21. Plaintiff and the other "Subcontractors" were usually scheduled to work two weeks straight and take one week off.

22. Defendant required Plaintiff and the other "Subcontractors" to work approximately twelve-hour days, seven days per week, or a total of approximately 84 hours.

23. Plaintiff did in fact work 84 hours per week for Defendant.

24. Defendant classified Plaintiff and the other "Subcontractors" as independent contractors and claims they are/were employees of the Site Supervisors. Thus, it did not pay them overtime at one and a half times their hourly rate for all hours worked in excess of 40 per week in violation of the FLSA.

25. Instead, Defendant paid Plaintiff and the other "Subcontractors" a day rate for each day they worked. The day rate did not include any increase if they worked over 40 hours in a week.

26. Defendant's violations of the FLSA were willful.

Original Complaint

**I.      Defendant Misclassified Plaintiff and the other "Subcontractors" as Independent Contractors**

27.    Defendant misclassified Plaintiff and the other "Subcontractors" as independent contractors, and thus, unlawfully denied them overtime pay.

28.    Plaintiff and the other "Subcontractors" work was integral to Defendant's business as it could not operate without them. For example, without Plaintiff and the other "Subcontractors" Defendant could not operate or operate efficiently its machines/equipment that it was hired by its clients to use.

29.    Defendant paid Plaintiff and the other "Subcontractors" directly.

30.    Upon information and belief, Defendant set Plaintiff's and the other "Subcontractors'" rate of pay. Plaintiff has this information and belief because his rate of pay was set by Defendant and not a Site Supervisor upon his hiring.

31.    Kyle Zemlak ("Mr. Zemlak"), Defendant's Chief Operating Officer, interviewed and hired Plaintiff.

32.    Jimmie Hancock ("Mr. Hancock"), Defendant's Human Resources Director, conducted Plaintiff's onboarding, which included his hiring paperwork.

33.    Mr. Hancock provided Human Resources related services to Plaintiff and the other "Subcontractors."

34.    Mr. Hancock provided Defendant's safety training materials to the "Subcontractors" such as Hydrodgen Sulfaide training, gas Training, and forklift training.

35.    As such, Defendant maintained Plaintiff's and the other "Subcontractors'" employment records, including hiring, training, and payroll documents.

36.    Defendant had the Contractors issue its standard operating procedures documents for their machines/equipment to the "Subcontractors".

37. Defendant provided benefits such as health insurance and life insurance to the "Subcontractors."

38. The "Subcontractors'" job duties did not require unique skills or specialized training. For example, Plaintiff never performed the job duties he performed for Defendant prior to his hiring and was only trained for a few days.

39. Defendant provided hard hats and uniforms (*e.g.*, shirt and jumpsuit) with its logo affixed to them to Plaintiff and the other "Subcontractors."

40. Plaintiff and the other "Subcontractors" were required to state they worked for Defendant while at the worksite.

41. Defendant reimbursed Plaintiff and the other "Subcontractors" for the purchase of some tools and equipment that were needed. For example, if a power washer, brake cleaners, or zip ties were needed and purchased by a "Subcontractor," it was reimbursed by Defendant.

42. Defendant reimbursed Plaintiff and the other "Subcontractors" during the training for traveling mileage.

43. After training, Defendant reimbursed Plaintiff and the other "Subcontractors" up to 100 miles per day for traveling.

44. The machines/equipment Plaintiff and the other "Subcontractors" cleaned, monitored, and performed general maintenance on were Defendant's and cost tens of thousands if not hundreds of thousands of dollars.

45. Defendant's machines/equipment had Defendant's logo affixed on them identifying they were Defendant's property.

46. Plaintiff and the other "Subcontractors" were transferred between Defendant's locations, which were in, but not limited to, Texas, New Mexico, and Utah.

47. Plaintiff has received his schedule and site location directly from Mr. Zemlack.

48. Plaintiff has reported his time worked directly to Mr. Zemlack in order to be paid for it.

49. Plaintiff and the other "Subcontractors" did not have to apply or submit any paperwork to the Site Supervisors when they were transferred. This is true even if they never worked under a particular Site Supervisor before.

50. Plaintiff and the other "Subcontractors" were not permitted to select what days and hours they wanted to work.

51. Plaintiff and the other "Subcontractors" could face discipline up to and including termination if they declined to work their set schedule.

52. Plaintiff and the other "Subcontractors" could be and were reprimanded if they took a day off.

53. Plaintiff and the other "Subcontractors" were not permitted to engage in negotiations between Defendant and the clients it contracted with to provide services for.

54. Defendant controlled Plaintiff and the other "Subcontractors" ability to work and their rate because it solely controlled what clients were acquired and at what price.

55. Defendant provided advertising to acquire the contracts for Plaintiff and the Other "Subcontractors" to work at.

56. Defendant provided holiday parties for the "Subcontractors" and their W-2 employees.

Original Complaint

57. "Subcontractors" were sometimes required to go to Defendant's chemical plants to perform maintenance on Defendant's machines and cut totes[1] for disposal alongside Defendant's W-2 employees.

58. Defendant did not employ W-2 employees at the fracking/oil sites. It only used W-2 employees at its chemical plants.

59. In or around December 17, 2021, Plaintiff began his employment for Defendant.

60. Plaintiff worked for Defendant in Texas, New Mexico, and Utah.

61. Plaintiff remained employed by Defendant until his employment ended on or around March 26, 2024.

62. Thus, the "Subcontractor's" service for Defendant was not short-term.

63. Accordingly, Defendant misclassified Plaintiff and the other "Subcontractors" as independent contractors.

## II. Facts Pertaining to Plaintiff's Discrimination, Hostile Work Environment, and Retaliation Claims

64. Plaintiff is Black.

65. When Defendant's business slowed down, it deviated from its usual two-weeks-on, one-week-off schedule and took an extra week off. Or a two-week on, two-weeks off schedule.

66. Defendant, however, predominately selected Black employees, including Plaintiff, to take the additional week off resulting in a loss of income.

67. In fact, Black employees, including Plaintiff were often selected to take the two weeks off twice before White employees were selected for the same. White employees were also

---

[1] 350 gallon jugs.

selected for their two-week period during holidays, which was preferable given the added holiday time off.

68. Additionally, Plaintiff was subjected to White co-workers using the term "Nigga." For example, in or around December 2023, Cody Ketchum, who is White, used the term "Nigga Music."

69. As for another example, Blake McLearen, a White co-worker, used the term "Nigga" while singing rap music in Plaintff's presence.

70. Plaintiff was subjected to the use of discriminatory terminology and scheduling within 300 days of filing his EEOC Charge of Discrimination.

71. In or around February 2024, Plaintiff complained to Mr. Hancock about the use of discriminatory terminology and scheduling.

72. On March 26, 2024, PFP terminated Mr. Jackson in retaliation for his complaints of racial discrimination.

## FLSA COLLECTIVE ACTION ALLEGATIONS

73. Plaintiff seeks to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on his own behalf as well as those in the following collective:

> All persons employed by Defendant as "Subcontractors" nationwide during the relevant time period, who worked over 40 hours per workweek without overtime pay at one and a half times their hourly rate for all hours worked in excess of 40 per workweek.

74. At all relevant times, Plaintiff was similarly situated to all such individuals in the FLSA Collective[2] because while employed by Defendant, Plaintiff and all FLSA Plaintiffs performed similar tasks, were subject to the same laws and regulations, were paid in the same or

---

[2] Hereinafter referred to as the "FLSA Plaintiffs."

substantially similar manner, were paid the same or similar rate, were required to work in excess of 40 hours per workweek, and were all misclassified as independent contractors resulting in the denial of overtime pay at the statutorily required rate of one and a half times their hourly rate for all hours worked in excess of 40 per workweek.

75. Defendant is and has been aware of the requirement to pay Plaintiff and the FLSA Plaintiffs at a rate of one and a half times their hourly rate for all hours worked in excess of 40 per workweek, yet willfully failed to do so.

76. The FLSA Plaintiffs, under Plaintiff's FLSA claim, are readily discernable and ascertainable. All FLSA Plaintiffs' contact information is readily available in Defendant's records. Notice of this collective action can be made as soon as the Court preliminarily certifies the FLSA Collective.

77. All questions relating to Defendant's violations of the FLSA share the common factual basis with Plaintiff. No claims under the FLSA relating to the failure to pay statutorily required overtime premiums are specific to Plaintiff and the claims asserted by Plaintiff are typical of those of members of the FLSA Collective.

78. Plaintiff will fairly and adequately represent the interests of the FLSA Collective and have no interests conflicting with the FLSA Collective.

79. A collective action is superior to all other methods of claim adjudication and is necessary in order to fairly and completely litigate violations of the FLSA.

80. Plaintiff's attorneys are familiar and experienced with collective and class action litigation, as well as employment and labor law litigation.

81. The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single

litigation. Prosecution of separate actions by individual FLSA Plaintiffs also creates a risk for varying results based on identical fact patterns as well as disposition of the FLSA Collective's interests without their knowledge or contribution.

82. The questions of law and fact are nearly identical for all FLSA Plaintiffs and therefore proceeding as a collective action is ideal. Without judicial resolution of the claims asserted on behalf of the FLSA Collective, Defendant's continued violations of the FLSA will undoubtedly continue.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**The Fair Labor Standards Act Made by Plaintiff on Behalf of All FLSA Plaintiffs**
**(Failure to Pay Overtime Wages)**

83. Plaintiff and the FLSA Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

84. Defendant misclassified Plaintff and the FLSA Plaintiffs as independent contractors.

85. Plaintiff and the FLSA Plaintiffs worked in excess of 40 hours per week.

86. Defendant knowingly failed to pay Plaintiff and the FLSA Plaintiffs the overtime rate of one and a half times their hourly rate for all hours worked in excess of 40 per week.

87. Defendant's conduct was willful and lasted for the duration of the relevant time periods.

88. Defendant's conduct was in violation of the Fair Labor Standards Act.

### AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964**
**Hostile Work Environment**

89. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

90. The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, as Defendant has engaged in the practice of discrimination by subjecting Plaintiff to a hostile work environment based on race.

91. The race-based harassment altered the conditions of Plaintiff's work environment.

92. Plaintiff's requests for relief are set forth below.

### AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
**Section 1981 of the Civil Rights Act of 1866**
**(Hostile Work Environment)**

93. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

94. The conduct alleged herein violates 42 U.S.C. §§ 1981 *et seq.*, as Defendant has engaged in the practice of discrimination by subjecting Plaintiff to a hostile work environment based on race.

95. The race-based harassment altered the conditions of Plaintiff's work environment.

96. Plaintiff's requests for relief are set forth below.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964**
**(Discrimination)**

97. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

98. The conduct alleged herein violates Title VII as Defendant has engaged in the practice of discrimination against Plaintiff based on his race, by subjecting him to disparate treatment in the terms and conditions of his employment, including but not limited to scheduling.

### AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF
### Section 1981 of the Civil Rights Act of 1866
### (Discrimination)

99. Plaintiff's requests for relief are set forth below.

100. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

101. The conduct alleged herein violates Section 1981 as Defendant has engaged in the practice of discrimination against Plaintiff based on his race, by subjecting him to disparate treatment in the terms and conditions of his employment, including but not limited to scheduling.

102. Plaintiff's requests for relief are set forth below.

### AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964
### (Retaliation)

103. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

104. Plaintiff complained of the discriminatory treatment to which he was subjected to Defendant. Plaintiff therefore engaged in protected activity under Title VII.

105. Defendants retaliated against Plaintiff through a retaliatory discharge.

106. But for his engaging in protected activity, Plaintiff would not have been terminated.

107. Plaintiff's requests for relief are set forth below.

### AS AND FOR A SEVENTH CAUSE OF ACTION FOR A VIOLATION OF
**Section 1981 of the Civil Rights Act of 1866**
**(Retaliation)**

108. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

109. Plaintiff complained of the discriminatory treatment to which he was subjected to Defendant. Plaintiff therefore engaged in protected activity under Title VII.

110. Defendants retaliated against Plaintiff through a retaliatory discharge.

111. But for his engaging in protected activity, Plaintiff would not have been terminated.

112. Plaintiff's requests for relief are set forth below.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the FLSA Plaintiffs employed by Defendant, demands judgment against Defendant as follows:

A. At the earliest possible time, Plaintiff should be allowed to give notice of this collective action, or the Court should issue such notice, to all members of the FLSA Collective, defined herein. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper overtime wages;

B. Designation of Plaintiff as representative of the FLSA Collective defined herein;

C. Certification of this action as a collective action pursuant to 29 U.S.C. § 216(b) for the purposes of the claims brought on behalf of all proposed FLSA Collective members under the FLSA;

D. Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with

them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

  E.  A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*;

  F.  Awarding all damages which Plaintiff and FLSA Plaintiffs have sustained as a result of Defendant's conduct, including back pay for unpaid overtime wages and liquidated damages;

  G.  Awarding Plaintiff and FLSA Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

  H.  Awarding Plaintiff and FLSA Plaintiffs of pre-judgment interest at the highest legal rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

  I.  Awarding Plaintiff all damages which he as sustained as a result of Defendant's discriminatory, hostile, and retaliatory treatement, including back pay, emoitional damages, front pay, and punitive damages;

  J.  Awarding post-judgment interest, as provided by law;

  K.  Awarding Plaintiff and FLSA Plaintiffs representing Defendant's share of FICA, FUTA, state unemployment insurance and any other required employment taxes; and

  L.  Granting Plaintiff and FLSA Plaintiffs other and further relief as this Court finds necessary and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated:	July 19, 2024
	Austin, Texas

						Respectfully Submitted,

						*/s/ Jay D. Ellwanger*
						Jay D. Ellwanger
						Texas State Bar No. 2406522
						jellwanger@equalrights.law
						**ELLWANGER HENDERSON LLLP**
						11149 Research Blvd., Ste. 100
						Austin, Texas 78759
						Telephone: (737) 808-2262
						Facsimile: (737) 808-2262

						Alexander White (*pro hac vice* to be filed)
						Texas State Bar No. 24126840
						awhite@vkv.law
						**VALLI KANE & VAGNINI LLP**
						600 Old Country Road, Suite 519
						Garden City, New York 11530
						Telephone: (516) 203-7180
						Facsimile: (516) 706-0248

						*Counsel for Plaintiff*

Original Complaint