## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **JOSHUA JACKSON, individually and** | § | |
| **on behalf of all others similarly situated,** | § | |
| *Plaintiff,* | § | |
| **v.** | § | **MO:24-CV-00167-DC-RCG** |
| | § | |
| **PFP INDUSTRIES, LLC,** | § | |
| *Defendant.* | § | |

### REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendant PfP Industries, LLC's Partial Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 14).[1] This case is before the Court through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the case law, the Court **RECOMMENDS** that Defendant's Partial Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 14).

### I.    BACKGROUND

On July 19, 2024, Plaintiff Joshua Jackson ("Plaintiff"), individually and on behalf of all others similarly situated ("Collective Plaintiffs"), filed his Original Complaint against Defendant PfP Industries, LLC ("Defendant"). (Doc. 1). Following Defendant's first Motion to Dismiss, Plaintiff filed an Amended Complaint. (Docs. 8, 13). Plaintiff brings a collective action under the ]Fair Labor Standards Act ("FLSA") for failure to pay overtime wages. (Doc. 13 at 13). Additionally, Plaintiff asserts several individual causes of action for employment discrimination: (1) hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"), (2) hostile work environment under Section 1981 of the Civil Rights Act of 1866 ("§ 1981"),

---

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

(3) discrimination under Title VII, (4) discrimination under § 1981, (5) retaliation under Title VII, and (6) retaliation under § 1981. *Id*. at 16–18.

Plaintiff and Collective Plaintiffs' relevant factual allegations are as follows. Defendant is an entity engaged in the fracking and oil industry. *Id*. at 4. On December 17, 2021, Plaintiff began his employment with Defendant. *Id*. at 10. Plaintiff and Collective Plaintiffs were hired as Field Service Specialists and/or Operators ("FSS/Os") to provide services in, but not limited to, Texas, Louisiana, Utah, and New Mexico. *Id*. at 4. Defendant used the titles "Field Service Specialists" and "Operator" interchangeably for the same position. *Id*. For example, Defendant called the FSS/Os "Operators" in the field and advertised the position under the title "Operator," but also called them "Field Service Specialists" on their hiring paperwork. *Id*. Plaintiff and Collective Plaintiffs worked at Defendant's clients' fracking sites where they performed field manufacturing and/or shop support duties. *Id*. Field manufacturing duties included "performing general maintenance of the fracking machines, greasing and cleaning the fracking machines, monitoring the amount of Defendant's friction reducer that was being disbursed for the fracking machines and adjusting it as necessary, conducting test runs on the fracking machines, changing out generators that powered the fracking machines, changing out hoses for the fracking machines, documenting the fracking machines usage and hours of operations, operating forklifts to move pods containing friction reducer and the fracking machines, changing out pods for the friction reducer." *Id*. at 5. Shop support duties included "distributing tools from Defendant's on-site warehouse, performing repairs on the fracking machines that could not be repaired in the field such as electrical or software issues, cleaning the shop, conducting an inventory of parts and equipment for the fracking machines such as pumps, plumbing parts, hoses, electrical parts, and screws, and going to the field location to make repairs." *Id*. Plaintiff performed exclusively

field manufacturing duties, but Plaintiff asserts that while all FSS/Os did not perform identical

job duties, all their duties related to the general maintenance and operation of the fracking sites.

*Id*. at 5, 12.

Defendant employed and paid Field Service Managers ("FSMs") to supervise the FSS/Os

at the fracking sites. *Id*. at 5. However, Defendant deemed the FSMs to be contractors and

deemed the FSS/Os to be employees of the FSMs "to skirt the FLSA's requirement to pay

Plaintiff and the FSS/Os overtime pay." *Id*. at 6. As such, Plaintiff and the FSS/Os were

classified as independent contractors. *Id*. As for their work schedule, Plaintiff and Collective

Plaintiffs were typically scheduled to work two weeks on, then take one week off. *Id*. Plaintiff

asserts Defendant required the FSS/Os to work approximately 12-hour days, seven days per

week, or a total of approximately 84 hours per week. *Id*. Because the FSS/Os were deemed

independent contractors, Defendant did not pay them overtime at one and a half times their

hourly rate for all hours worked in excess of 40 per week. *Id*. Instead, Plaintiff and Collective

Plaintiffs were paid a day rate with no increase for working over 40 hours in a week. *Id*. Pursuant

to 29 U.S.C. § 216(b), Plaintiff's Complaint defined the collective:

> All persons who worked for Defendant as a Field Service
> Specialist and/or Operator nationwide during the relevant time
> period, who were paid a day rate, were paid at any point directly
> by Defendant, and who worked over 40 hours per week without
> overtime pay at one and a half times their hourly rate for all hours
> worked in excess of 40 per workweek.

*Id*. at 14.

Additionally, Plaintiff asserts factual allegations relevant to his individual claims.

Plaintiff is Black and alleges Defendant participated in discriminatory scheduling practices. *Id*. at

12. FSS/Os typically worked two-weeks-on, one-week-off; however, when Defendant's business

slowed, it began scheduling FSS/Os to work two-weeks-on, two-weeks-off. *Id*. Plaintiff alleges

Defendant "predominately selected Black FSS/Os including Plaintiff, to take the additional week off resulting in a loss of income." *Id*. Specifically, Plaintiff provides that Black FSS/Os, including himself, were often selected to take the two weeks off twice before White FSS/Os were selected. *Id*. at 13. Further, White FSS/Os were selected to take their two weeks off during the holidays, "which was preferable given the added holiday time off." *Id*.

In the Complaint, Plaintiff also alleges he was "subjected to White FSS/Os using the term 'N***a.'" *Id*. In December 2023, Plaintiff stated a White FSS/Os used the term "N***a Music." *Id*. Additionally, another White FSS/Os used the term "N***a" while singing rap music in Plaintiff's presence. *Id*. Plaintiff provides he took offense to the use of the word, and it was difficult for Plaintiff to concentrate on the performance of his job duties. *Id*. In February 2024, Plaintiff complained to the Human Resources Director ("HR Director") about the use of discriminatory terminology and scheduling. *Id*. at 14. On March 26, 2024, Defendant terminated Plaintiff "in retaliation for his complaints of racial discrimination." *Id*.

On October 22, 2024, Defendant filed a Partial Motion to Dismiss Plaintiff's Amended Complaint under Rule 12(b)(6). (Doc. 14). Defendant seeks to dismiss Plaintiff's claims of (1) nationwide collective action pursuant to the FLSA, (2) discrimination under § 1981, (3) hostile work environment under Title VII and § 1981, and (4) retaliation under Title VII and § 1981. *Id*. The instant matter is fully briefed and ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery.") (internal quotation marks and citations omitted).

In a court's review of a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain

to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

### III.   DISCUSSION

#### A. FLSA Collective Action Claim

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014) (quoting 29 U.S.C. § 207(a)(1)) (internal quotations omitted). The FLSA authorizes employees to maintain a suit against employers "for and on behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b).

Defendant only challenges two aspects of Plaintiff's FLSA collective action claim. First, Defendant asserts Plaintiff failed to plead sufficient facts supporting a nationwide collective. (Doc. 14 at 4). Instead, Plaintiff only provided plausible facts to support that he is similarly situated to a putative collective of all FSS/Os from Louisiana, New Mexico, Texas, and Utah. *Id*. Thus, from what the Court can tell, Defendant does not seek to dismiss the collective action as a whole, but rather to limit the putative plaintiffs to those who worked in Louisiana, New Mexico, Texas, and Utah. *See id*. Second, Defendant argues Plaintiff is not a proper lead Plaintiff for two reasons: (1) Plaintiff only performed field manufacturing duties, so he is not similarly situated to those that performed shop duties; and (2) Plaintiff and other Black FSS/Os were discriminatorily scheduled, so he is not similarly situated to those that did not suffer from the schedule changes. *Id*. at 5.

The Court finds both of Defendant's arguments unpersuasive. From the Court's perspective, Defendant has jumped past the 12(b)(6) motion to dismiss to the notice stage. In Plaintiff's Response, he argues that the proper time for the Court to determine whether Plaintiff is similarly situated to the putative collective is after preliminary discovery, not at the motion to dismiss stage. (Doc. 15 at 12). The Court agrees. While Defendant can challenge the collective action claim in its Rule 12(b)(6) motion, Plaintiff need only meet the pleading standard. *See e.g.*, *Guilbeau v. Schlumberger Tech. Corp.*, No. 21-CV-0142, 2022 WL 199271, at *6 (W.D. Tex. Jan. 21, 2022); *Barajas v. Fil-Mar Energy Servs., LLC*, No. 22-CV-00027, 2022 WL 17732435, at *2 (W.D. Tex. July 7, 2022); *Barrick v. Edge OFS Holdings, LLC*, No. 24-CV-00003, 2025 WL 498548, at *6–7 (W.D. Tex. Jan. 29, 2025), *R. & R. adopted*, 2025 WL 495563 (W.D. Tex. Feb. 13, 2025). To defeat a 12(b)(6) motion, collective action allegations must only give the defendant fair notice of the putative class. *Flores v. Act Event Servs., Inc.*, 55 F. Supp. 3d 928, 940 (N.D. Tex. 2014); *Tullis v. Exxonmobil Corp.*, No. 22-CV-00192, 2022 WL 18359154, at *6 (S.D. Tex. Dec. 2, 2022). Fair notice requires Plaintiff to "clearly define the putative collective class." *Flores*, 55 F. Supp. 3d at 940. This is a low bar. *See Barrick*, 2025 WL 498548, at *7. At this early stage of the proceedings, Plaintiff must plead sufficient facts, accepted as true, to provide notice to Defendant of who Plaintiff seeks to send notice to. *Barajas*, 2022 WL 17732435, at *2. In contrast, the notice stage "entails an analysis to determine if Plaintiffs are similarly situated enough to the proposed opt-in plaintiffs to warrant sending notice to that group of potential opt-in plaintiffs." *Id.*; *Tullis*, 2022 WL 18359154, at *7 ("The analysis at [the motion to dismiss] stage is based solely on the pleadings and requires only fair notice of what the claims are, including the collective action claims. The analysis following *Swales* discovery is based on the evidence and requires a higher standard than fair notice to [the

defendant] before this Court can authorize notice to potential opt-in plaintiffs."). "To be sure, [Plaintiff] will need to provide evidence that he and all the other workers he seeks to include in this collective action are similarly situated before notice is sent. However, that is not an issue to be decided solely on the pleadings at this stage." *Tullis*, 2022 WL 18359154, at *7 (citing *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 440–43 (5th Cir. 2021)).

Here, Plaintiff sets out a preliminary definition of the alleged collective. He asserts himself and all Collective Plaintiffs worked as FSS/Os for 84 hours per work and each were: (1) paid a day rate, (2) misclassified as independent contractors, (3) subject to the same employment terms and conditions, (4) not paid an overtime rate, and (5) supervised in the same manner. (Doc. 13 at 6, 12, 14). Although Plaintiff stated the FSS/Os performed either field manufacturing or shop support, both job duties related to the general maintenance and operation of the fracking sites. *Id*. at 12. Further, they still had the same job title and were subject to the same common compensation scheme, regardless of their job duties. *Id*.; *Guilbeau*, 2022 WL 199271, at *7 ("At the pleading stage, taking the Plaintiff's allegations that other similarly situated employees were subject to the same policies as true, the Court finds sufficient factual allegations to permit the case to proceed as a collective action beyond the pleading stage."). Defendant also argues Plaintiff cannot be similarly situated to non-black FSS/Os who did not suffer the discriminatory scheduling, as discussed below. (Doc. 14 at 5). However, the Court agrees with Plaintiff that the number of hours and weeks he and other Black FSS/Os worked compared to White FSS/Os does not destroy the collective and is only relevant to potential damages because Plaintiff alleges he worked 84 hours per week when he worked and was not paid overtime. *See Floyd v. Stryker Corp.*, No. 22-CV-1131, 2024 WL 24341, at *5 (N.D. Tex. Jan. 2, 2024) ("According to [Defendant's] records, the opt-ins worked varying amounts of overtime. This line of argument,

however, goes to damages, and courts have held that collective members having different amounts of damages does not weigh against certification where the amount of damages is not relevant to assessing liability."); *Rogers v. 12291 CBW, LLC*, No. 19-CV-00266, 2022 WL 19976339, at *13 (E.D. Tex. Mar. 31, 2022) (finding the plaintiff and collective plaintiffs similarly situated despite there being a large range in the times they worked, how much they made, and what their potential damages may be). Therefore, the Court finds Plaintiff's factual allegations clear the low bar for the collective action to survive.

Finally, Defendant takes issue with the geographic location of the potential collective. (Doc. 14 at 4). "FLSA violations at one of a company's multiple locations generally are not, without more, sufficient to support company-wide notice." *Rueda v. Tecon Servs. Inc.*, No. H-10-4937, 2011 WL 2566072, at *4 (S.D. Tex. June 28, 2011). "However, geographic commonality is not necessary to satisfy the FLSA collective action's similarly situated requirement, so long as the employees were impacted by a common policy." *Tullis*, 2022 WL 18359154, at *4 (quoting *Holt v. XTO Energy, Inc.*, No. 16-CV-00162, 2016 WL 11083342, at *3 (W.D. Tex. Nov. 10, 2016)). Plaintiff has worked for Defendant for about 27 months in four separate states. (Doc. 13 at 10–11). Plaintiff specifically alleged he has knowledge that other FSS/Os in the states of Texas, New Mexico, Louisiana, and Utah were subject to same common pay scheme and performed the same or similar job duties. *Id*. And, reading the Complaint in the light most favorable to Plaintiff, he alleges all FSS/Os employed by Defendant, regardless of geographic location, were impacted by the common policy if being classified as independent contractors and not paid overtime. *Id*. at 12. Thus, the Court finds Plaintiff sufficiently pleaded a nationwide collective for it to survive the motion to dismiss stage. *Tullis*, 2022 WL 18359154, at *4 ("[Plaintiff] has adequately alleged facts supporting a nationwide class because he worked for

9

the company for around 22 months and has alleged that his experience made him aware of other potential collective members that were subject to the same illegal pay practice, regardless of their geographical location."); *Hutchings v. XTO Energy, Inc.*, No. 20-CV-94, 2021 WL 2419456, at *4 (W.D. Tex. Jan. 8, 2021) (concluding the same where the employee worked at the company for 7 months).

The Court **RECOMMENDS** that Defendant's Partial Motion to Dismiss be **DENIED** as to Plaintiff's FLSA collective action claim. (Doc 14).

## B. Plaintiff's Individual Claims

### i. Discrimination Claim under § 1981

Defendant moves to dismiss Plaintiff's claim of discrimination on the basis of disparate treatment under § 1981. (Doc. 14 at 5). Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). The Supreme Court has explained that § 1981 forbids all racial discrimination in private and public contracts. *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604 (1987). Section 1981, like Title VII, "serves as a deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of race." *Carroll v. Gen. Accident Ins. Co. of Am.*, 891 F.2d 1174, 1176 (5th Cir. 1990). Here, to establish a § 1981 claim for contractual discrimination, Plaintiff must allege (1) he is a member of a racial minority; (2) Defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017). Discrimination can be shown by disparate treatment—"actions that treat [a plaintiff] worse than others based on [his] race . . . ." *Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006, 1013

(5th Cir. 2023). Section 1981 employment discrimination claims follow the same framework as those brought under Title VII. *See Body by Cook, Inc.*, 869 F.3d at 386. However, the claims are distinct in that the Supreme Court has recently found that to prevail under § 1981, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass. of African Am.-Owned Media*, 589 U.S. 327, 341 (2020); *Williams v. Waste Mgmt. Inc.*, 818 F. App'x 315, 325 (5th Cir. 2020) ("Although similar in some respects to Title VII, 42 U.S.C. § 1981 requires plaintiff's showing but-for causation.").

Here, Plaintiff's discrimination claim arises from Defendant using "discriminatory . . . scheduling" practices. (Doc. 13 at 13). Plaintiff alleges when Defendant's business slowed down, it deviated from its usual two-weeks-on, one-week-off schedule for its FSS/O employees. *Id.* at 12. Instead, Defendant began scheduling some employees to work two-weeks-on, two-weeks-off, resulting in an additional week off and a loss of income. *Id.* Plaintiff asserts that Black employees, including Plaintiff, were often selected to take the two weeks off twice before White employees were selected. *Id.* at 13. Plaintiff also provides that when White employees were selected, their two-week periods fell over the holidays, "which was preferable given the added holiday time off." *Id.* Finally, Plaintiff compares his schedule with a specific White FSS/O. *Id.* Plaintiff alleges this White FSS/O was not scheduled for two weeks off like Plaintiff was even though the White FSS/O was less tenured at the company than Plaintiff. *Id.*

Based on these alleged facts, Defendant argues only that Plaintiff failed to show the required but-for causation. (Doc. 14 at 6–7). Defendant asserts the discriminatory practice Plaintiff complains of is the scheduling and the but-for cause of the scheduling changes was Defendant's business slowing down, not the race of the employees. *Id.* "In other words, the

business slowing was *the* reason the schedule changed at all. Therefore, even if race was considered in scheduling, Plaintiff's Amended Complaint shows that it was, at most, only a factor and not *the* reason for the action, as is necessary to state a claim under 1981." *Id*. As Plaintiff notes, Defendant confuses the issue here. Reading the Complaint in the light most favorable to Plaintiff, the Court finds Plaintiff's alleged discriminatory practice is selecting which employees will take an additional week off, not the company's need to schedule employees differently due to a business slowdown. (*See* Doc. 15 at 16). Thus, the issue is whether, Plaintiff sufficiently pleaded, but for his race, Defendant would have selected him to work two-weeks-on, two-weeks-off.

The Court finds Plaintiff sufficiently alleged but-for causation. To start, Plaintiff specifically asserts he "would not have been scheduled to take an additional week off *but for his race* as other similarly situated White employees were not required to do the same." (Doc. 13 at 21) (emphasis added); *Bailey v. Sand*, No. 20-CV-00232, 2021 WL 12303490, at *5 (W.D. Tex. Aug. 3, 2021) (holding the plaintiff's assertion that "but for" his race he would not have suffered the loss of a legally protected right was sufficient to state the element of causation under § 1981); *Stading v. Tex. A&M Univ.-Texarkana et al.*, No. 24-CV-00066, 2025 WL 748631, at *14 (E.D. Tex. Feb. 18, 2025) (same). Plaintiff also provides that Black employees were selected to take the two weeks off twice before White employees, including a specific comparator that was less tenured than Plaintiff. *Body by Cook, Inc.*, 869 F.3d at 386 ("An allegation that similarly situated non-minorities received better treatment could create the necessary inference and set the predicate for establishing the section 1981 claim.") (internal quotations omitted). Therefore, at this early stage of the proceedings, the Court finds Plaintiff's allegations support but-for causation and his claim of racial discrimination. The Court **RECOMMENDS** that Defendant's

Partial Motion to Dismiss be **DENIED** as to Plaintiff's discrimination claim under § 1981. (Doc 14).

      **ii.**    **Hostile Work Environment Claim Under § 1981 and Title VII**

In its Motion, Defendant argues Plaintiff's hostile work environment claim under § 1981 and Title VII should be dismissed. (Doc. 14). Because "claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII," the Court will rely on Title VII case law. *Mendoza v. Helicopter*, 548 F. App'x 127, 128 (5th Cir. 2013).

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against any individual with respect to employment because of such individual's race. 42 U.S.C. § 2000e-2(a)(1). Hostile work environment is a specific discrimination claim under Title VII. *Hudson v. Lincar, Inc.*, 58 F.4th 222, 229 (5th Cir. 2023). Pursuant to § 2000e-2(a)(1), "[i]t shall be an unlawful employment practice for an employer—(1) . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). "The phrase terms, conditions, or privileges of employment evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted). "When a workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Hudson*, 58 F.4th at 229 (citing *Harris*, 510 U.S. at 21) (internal quotation marks omitted).

To establish a hostile work environment claim, Plaintiff must show that he:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Williams-Boldware v. Denton County*, 741 F.3d 635, 640 (5th Cir. 2014). "For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). "Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive." *Id.* "Whether an environment is 'hostile' or 'abusive' is determined by looking at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Shepard v. Comptroller of Pub. Accts. of State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999) (citing *Harris*, 510 U.S. at 23). "Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." *Id.*

Defendant asserts dismissal is appropriate because Plaintiff fails to plead elements two through five to state a claim of race discrimination based on a hostile work environment theory. (*See* Doc. 14). Defendant argues Plaintiff only alleges two instances where a racial slur was used, in neither instance was the slur directed at him, the alleged harassers were not Plaintiff's supervisor, and Plaintiff asserted no facts that his employer knew or should have known about the harassment. *Id.* at 7–10. In contrast, Plaintiff argues Defendant requires too high a pleading

standard and the two instances Plaintiff alleged are sufficiently severe to give rise to a viable
Title VII claim. (Doc. 15 at 20). The Court agrees with Defendant.

While the Court agrees Plaintiff need not make out a prima facie case, Plaintiff must still
plead a plausible claim. *See Raj v. La. St. Univ.*, 714 F.3d 322, 331 (5th Cir. 2013); *McCorvey v.
Univ. of Tex. Health Sci. Ctr. at San Antonio*, No. 16-CV-631, 2016 WL 8904949, at *12
(W.D. Tex. Dec. 21, 2016). Thus, Plaintiff must still plead sufficient facts for the Court to infer
support for each element of a hostile work environment claim. *McCorvey*, 2016 WL 8904949,
at *12. Here, the facts Plaintiff alleges, even in the light most favorable, do not meet the high
burden established by Fifth Circuit precedent. *See, e.g.*, *Gowesky v. Singing River Hosp. Sys.*,
321 F.3d 503, 509 (5th Cir. 2003). Rather than arguing he was subjected to frequent and
pervasive conduct, Plaintiff relies on two incidents to classify the harassment as severe.
(*See* Doc. 15 at 20). It is well established that "[u]nder the totality of the circumstances test, a
single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim as
well as a continuous pattern of much less severe incidents of harassment." *WC&M Enters., Inc.*,
496 F.3d at 400. In his Complaint, Plaintiff alleges he was subjected to "White FSS/Os using the
term 'N***a.'" (Doc. 13 at 13). Specifically, in December 2023, a White FSS/Os used the term
"N***a Music." *Id*. Then, another White FSS/Os used the term "N***a" while singing rap music
in Plaintiff's presence. *Id*.

Plaintiff compares these facts to the Fifth Circuit's recent decision in *Woods v. Cantrell*,
29 F.4th 284 (5th Cir. 2022). In *Woods*, the plaintiff alleges his supervisor directly called him a
"Lazy Monkey A__ N____" in front of his fellow employees. *Id*. at 285. There, the Circuit
reasoned "perhaps no single act can more quickly alter the conditions of employment and create
an abusive working environment than the use of an unambiguously racial epithet such as [the N-

word] by a supervisor in the presence of his subordinates." *Id*. (internal quotations omitted). While acknowledging and appreciating the analysis of the Fifth Circuit, this Court finds the instant case distinct from *Woods* such that the same result is not required. Similar to the court in *Batiste v. City of Rayne*, "this Court does not interpret *Woods* to suggest that *any* use of the 'N-word' will *ipso facto* create a hostile work environment." No. 23-CV-00858, 2024 WL 3419030, at *3 (W.D. La. June 27, 2024). The Court agrees with Defendant that there are two key differences between *Woods* and the instant case. First, the two comments were made by Plaintiff's coworkers, not his supervisor. (*See* Doc. 13 at 13). Second, the two comments were not directed at Plaintiff, or seemingly anyone, but rather were said in Plaintiff's presence. *See id*.; *Batiste*, 2024 WL 3419030, at *1–3 (holding the plaintiff did not state a claim for a hostile work environment when one employee said to another in the plaintiff's presence, "You will be one dead n****r"). Thus, the Court finds the well-pleaded facts in the Complaint do not rise to the level of severity necessary for Plaintiff's claim to survive a motion to dismiss.

The alleged harassment is neither severe nor pervasive because no one incident was objectively abusive or hostile. While the conduct Plaintiff describes was unwanted and inappropriate for the workplace, taken as a whole, Plaintiff does not sufficiently plead that the conduct created a hostile work environment. Thus, the Court **RECOMMENDS** that Defendant's Partial Motion to Dismiss be **GRANTED** as to Plaintiff's hostile work environment claim under § 1981 and Title VII. (Doc. 14).

### i.    Retaliation Claim Under § 1981 and Title VII

Defendant also seeks dismissal of Plaintiff's retaliation claim under § 1981 and Title VII. (Doc. 14 at 10). "To present a prima facie case of retaliation under either Title VII or § 1981, a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) he was

subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).

In its Motion to Dismiss, Defendant argues Plaintiff's retaliation claims should be dismissed for lack of engaging in a protected activity. (Doc. 14 at 11). "An employee has engaged in activity protected by Title VII if he has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Parker v. State of La. Dep't of Educ. Special Sch. Dist.*, 323 F. App'x. 321, 329 (5th Cir. 2009) (quoting 42 U.S.C. § 2000e-3(a)). At issue in this case is the opposition clause. "To satisfy th[e] opposition requirement, [Plaintiff] need only show that [he] had a reasonable belief that the employer was engaged in unlawful employment practices." *Id.* Defendant argues Plaintiff failed to satisfy the first element as Plaintiff could not have reasonably believed his co-workers' comments constituted an unlawful employment practice. (Doc. 14 at 11). Defendant explains because it is well-established that isolated comments do not amount to an unlawful employment practice, Plaintiff could not have reasonably believed it was such. *Id.* As Plaintiff points out, Defendant proffers that because Plaintiff failed to plead a hostile work environment claim, he cannot plead a retaliation claim. (Doc. 15 at 17).

The Court disagrees with Defendant and finds Plaintiff pleaded sufficient facts regarding the complaints to the HR Director allowing the Court to reasonably infer he engaged in a protected activity under Title VII. In opposing unlawful practices, "[m]agic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown v. UPS*, 406 F. App'x 837, 840 (5th Cir.

17

2010) (citations omitted). Moreover, "[c]omplaining about unfair treatment without specifying why the treatment is unfair . . . is not a protected activity." *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008). "An employee's complaint to [his] employer that is vague, 'without any reference to an unlawful employment practice under Title VII, does not constitute protected activity.'" *Jenkins v. La. Workforce Comm'n*, 713 F. App'x. 242, 246 (5th Cir. 2017) (quoting *Davis*, 448 F. App'x. at 493). In *Moore v. United Parcel Service, Inc.*, 150 F. App'x. 315 (5th Cir. 2005), for example, the Fifth Circuit held that a delivery driver's grievance—alleging that the company violated the union agreement when it fired him—was not a protected activity under Title VII. *Id.* at 319. The court reasoned that the driver was not engaged in a protected activity because the grievance "made no mention of race discrimination." *Id.* Here, Plaintiff's complaints to the HR Director constitute engaging in a protected activity. Plaintiff asserts that two months after his co-workers made the alleged comments, he complained to the HR Director about the use of "discriminatory terminology." (Doc. 13 at 14); *Cuellar v. Sw. Gen. Emergency Physicians, P.L.L.C.*, 656 F. App'x 707, 708 (5th Cir 2016) (holding the plaintiff sufficiently stated a claim for retaliation by alleging she reported to human resources personnel one comment her supervisor made to her nearly three months after it happened). As Plaintiff alleges, the complaint to the HR Director references unlawful employment practices and is sufficient to alert his employer of such.

Plaintiff has also sufficiently alleged a reasonable belief that the alleged comments constituted a hostile work environment claim based on his race. In a retaliation claim, "Plaintiff is only required to show that [he] had a reasonable belief that the actions by [his] employer constituted a violation of Title VII when [he] engaged in the protected conduct of reporting it." *McCorvey*, 2016 WL 8904949, at *8; *Parker*, 323 F. App'x at 329 (holding "a plaintiff can

establish a prima facie case of retaliatory discharge under the opposition clause of section 704(a) if he shows that he had a reasonable belief that the employer was engaged in unlawful employment practices"). "It has long been the law in [the Fifth Circuit] and other circuits that a plaintiff contending that [he] was retaliated against for proactively reporting employment discrimination need not show that the discrimination rose to the level of a Title VII violation, but must at least show a reasonable belief that it did." *Id.* (quoting *E.E.O.C. v. Rite Way Serv.*, 819 F.3d 235, 237–38 (5th Cir. 2016)).

Despite dismissing Plaintiff's hostile work environment claim, the Court finds Plaintiff sufficiently alleged a reasonable belief that his employer's actions were in violation of Title VII. "[T]he reasonable belief standard recognizes there is some zone of conduct that falls short of an actual violation but could be reasonably perceived to violate Title VII." *Rite Way Serv.*, 819 F.3d at 242. The Fifth Circuit demonstrated the existence of this gray area between actual violation and perceived violation in cases where the court "affirmed summary judgment on an employee's discrimination claim while simultaneously reversing summary judgment on his or her opposition clause claim." *Id.* (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 305–09 (5th Cir.1996); *Parker*, 323 F. App'x at 329–30). Further, the Circuit has provided that even though an isolated comment generally cannot support a Title VII harassment claim, a viable Title VII retaliation claim does not necessarily fail. *Cuellar*, 656 F. App'x at 710 ("[O]pposition clause claims grounded in isolated comments are not always doomed to dismissal.").

Here, the Court finds Plaintiff could reasonably believe he was being subjected to a hostile work environment. Two comments using the term N**** were made in Plaintiff's presence. Courts across the country find this specific racial epithet to carry significant weight making it reasonable for Plaintiff to believe he was reporting unlawful discrimination. *Woods*,

29 F.4th at 285 (collecting cases). While the comments of Plaintiff's coworkers did not rise to the requisite level of severe and pervasive, the Fifth Circuit has explained, "[w]e do not require an employee to be 'an expert' in Title VII law." *Id.* Therefore, Plaintiff pleaded sufficient facts showing he engaged in a protected activity because he made reports to the HR Director about conduct that he reasonably believed was protected under Title VII.

The second element Plaintiff must allege to establish a claim for retaliation is that an adverse employment action occurred. *LeMaire v. La. Bd. of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007). This element is clear as the parties do not dispute that Plaintiff was terminated on March 26, 2024 (Doc. 13 at 14), which is a materially adverse employment action. *Cuellar*, 656 F. App'x at 709.

Finally, Plaintiff must show there was a causal connection between the participation in the protected activity and the adverse employment decision. *LeMaire*, 480 F.3d at 388. "At the prima facie stage, 'the standard for satisfying the causation element is 'much less stringent' than a 'but for' causation standard.' Nevertheless, the plaintiff must produce some evidence of a causal link between the protected activity and the adverse employment action to establish a prima facie case of retaliation." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001)). "[C]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). Here, Plaintiff made the complaint to the HR Director in February 2024, and Plaintiff was terminated on March 26, 2024. (Doc. 13 at 14). The close timing here establishes the requisite causal connection. *See Aguillard v. La. Coll.*, 824 F. App'x 248, 251 (5th Cir. 2020) (holding "[w]hile a four-month gap may be sufficient evidence

of causation, a five-month gap is too long absent other evidence); *Jasso v. Midland-Odessa Transit Mgmt, Inc.*, No. 22-CV-00250, 2023 WL 6474435, at *3 (W.D. Tex. Sept. 19, 2023) (inferring a causal connection because only ten days separated the plaintiff's complaint and her firing).

Plaintiff sufficiently pleads he engaged in a protected activity, an adverse employment action occurred, and there was a causal connection between the protected activity and the adverse employment action. *LeMaire*, 480 F.3d at 388. Thus, the Court **RECOMMENDS** that Defendant's Partial Motion to Dismiss be **DENIED** as to Plaintiff's retaliation claim under § 1981 and Title VII. (Doc 14).

## IV.    RECOMMENDATION

Based on the circumstances present in this case, the Court **RECOMMENDS** that Defendant's Partial Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 14). Defendant's Motion should be **GRANTED** as to Plaintiff's hostile work environment claim under § 1981 and Title VII. *Id*. Defendant's Motion should be **DENIED** as to Plaintiff's claims of a FLSA collective action, discrimination under § 1981, and retaliation under § 1981 and Title VII. *Id*.

SIGNED this 27th day of March, 2025.


RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).